McNULTY, GEORGE & HALL *et al. vs.* PRUDEN, administrator.

| 62 | 135 |
| 98 | 342 |
| 62 | 135 |
| a111 | 564 |
| 62 | 135 |
| 113 | 366 |
| 62 | 135 |
| 121 | 519 |
| 62 | 135 |
| d129 | 501 |

1. On a bill in equity by the administrator against the creditors to settle the order of priority among the various claims against the estate, the decree being favorable to some of the defendants and unfavorable to the others, the latter class cannot prosecute a writ of error to reverse the decree without joining the former as co-plaintiffs in error. The omission, however, is amendable, and is not cause for dismissing the writ, unless the privilege of amending is declined.

2. Where a debtor has recognized and acknowledged as correct a claim against him resting in account, by entering the amount thereof in his books to the credit of his creditor, and has afterwards, upon the day preceding his death, referred the person expected to act as his administrator to his books as a means of correct information touching his liabilities, the account against his estate should be ranked, under the Code, section 2533, paragraph 7, as a "liquidated de-

mand," if the creditor will limit his claim to the amount or balance in his favor as shown by the books of the decedent.

3. A bailment of goods for sale, an entry of the value thereof by the bailee in his books to the credit of the bailor, and a sale of the goods by the bailee in his life-time for cash, will render the claim for the proceeds a " liquidated demand " against his estate.

4. By the Code, §406, one half of the fee of an attorney, unless otherwise stipulated, is a retainer and due immediately. Hence, where counsel were employed by parol contract at a gross sum to defend certain indictments, and the accused died before all the contemplated services were rendered, and there was no abandonment of the cases, or other default, on the part of the attorneys, one-half of the stipulated fee was a " liquidated demand " against the client's estate.

Practice in the Supreme Court.   Parties.   Amendment. Administrators and executors.   Distribution.   Attorney and client.   Fees.   Before Judge McCUTCHEN.   Whitfield County.   At Chambers.   January 10th, 1878.

This case arose upon a bill filed by Pruden as administrator of Haddock, against the creditors of the intestate to marshal the assets, and praying direction as to the payment of the debts.   By agreement, the case was heard in vacation.   The questions passed upon in this court arose upon four claims, to-wit:   1st. McNulty, George & Hall, account for $332.42.   2nd. The Holston Salt and Plaster Company, account for $25.20.   3rd. Johnson & McCamy, account, for retainer as attorneys, for $17.50.   4th. Hanks & Bivings, similar account for like amount.

It was admitted that the administrator had in his hands for distribution $1,500.00 ; that the indebtedness of the estate by note was $1,914.70 ; that the indebtedness by account was $742.00 ; that the four accounts above stated were due   The questions to be decided arose as to their respective rank and dignity as compared with the indebtedness by note.

As to the first, the undisputed facts were as follows : During his last sickness Haddock requested Pruden to administer on his estate, and, on the day before his death,

stated to him that his books would show how much he owed foreign creditors.    The administrator found only two books relating to his mercantile business, one a cash-book and the other a statement of accounts with persons from whom he bought goods.    The last was in deceased's hand-writing.    It showed the amount due to McNulty, George & Hall, as above stated.

As to the second, the facts were as follows :

The Holston Salt and Plaster Company placed their salt with deceased to be sold on commission.    The latter sold out for cash, and this indebtedness was for the goods thus sold.

As to the third and fourth accounts, the facts were as follows : Deceased was indicted in two cases in Whitfield superior court.    He employed Johnson & McCamy and Hanks & Bivings to defend him, agreeing to pay each firm for their services $25.00.    One of the cases was a misdemeanor and the other a felony, though the counsel believed both to be misdemeanors at the time of their employment.    The first was tried and finally disposed of before intestate's death ; the latter had been terminated by his death.    His counsel present their claims in the following shape : $10.00 as due to each firm in the misdemeanor, and $7.50 as due to each as a retainer in the felony.

The chancellor decreed that the aforesaid accounts be postponed to the notes.    To this ruling the four defendants above named excepted.

When the case was called in this court, counsel for defendant moved to dismiss the writ of error because all of the defendants to the bill in equity, especially the creditors by note, were not made parties plaintiffs in error.    From the bill of exceptions itself it is impossible to state who were the defendants in error.    Service was perfected upon the administrator and one of the creditors by note.

In reply to this motion, counsel for plaintiffs moved to amend the bill of exceptions by making the other defendants to the bill in the court below plaintiffs in error.    This

was allowed and the motion to dismiss overruled, as will appear by the first head-note,

SHUMATE & WILLIAMSON; J. L. SMITH; T. R. JONES, for plaintiffs in error, cited 19 *Ga.*, 554; 2d Story's Eq., 1258; 14 *Ga.*, 379; 59 *Ib.*, 782; Code, §2533; Cobb's Dig., 287; 5 *Ga.*, 275; 33 *Ib.*, 219; 18 *Ib.* 407; 15 *Ib.*, 322.

JOHNSON & McCAMY; W. K. MOORE, for defendant, cited 1 Chitty's Pl'd'gs, 359; 1 Saunders, 32; 2 Gr'l'f's Ev., 128. On the motion to dismiss, they cited Code, §4259; 1 *Ga.*, 495; 2 *Ib.*, 287, 348, 408, 439; 3 *Ib.*, 584, 121; 7 *Ib.*, 510; 26 *Ib.*, 398; 57 *Ib.*, 197.

BLECKLEY, Justice.

1. The motion made to dismiss the writ of error for the the non-joinder of those defendants in the bill to whom precedence or priority in sharing the assets of the estate was decreed below, could be met and avoided only by an amendment introducing said co-defendants as co-plaintiffs in error here. The amendment may be made instanter, the record affording matter to amend by, (Code, §4288; 4 *Ga.*, 403; 8 *Ib.*, 317; 12 *Ib.*, 270; 49 *Ib.*, 388,) and when made, it will be the privilege of the new parties to sever with the old, and decline to take part in prosecuting the writ. Because of their interest in the judgment to be rendered here, it is necessary for them to be before this court as parties, but that very interest entitles them to take whichever side of the case they please. After severing from their co-plaintiffs in error, they may aid in defending here, and in upholding the judgment rendered below. It has been suggested that the amendment would have to be followed by notice to them; but this is incorrect, for they must take notice at their peril that the cause has been brought here by their co-parties. If it had been brought up by the complainant below, and not by some of the defendants, other rules would apply. Between adding new plaintiffs in error

and adding new defendants in error, the difference is considerable; so is it in regard to giving notice or effecting service. A plaintiff in error is not to be served, whether he comes up by his own act or by the act of his co-plaintiffs. But a defendant in error must be served as the statute prescribes. Code §4259. The only necessary defendant in error was the complainant below; that is, the administrator, and he was duly served. On the requisite parties as plaintiffs in error, the right to sever, etc., see 3 Bac. Abr., 335, 336; 6 *Ga.*, 207; 7 *Ib.*, 510; 10 *Ib.*, 2; 18 *Ib.*, 619, 620; 26 *Ib.*, 398.

2, 3, 4. The privilege of amending having been accepted and exercised, the merits of the case are to be passed upon. And, first, it is to be observed that the question of liquidated demands, as now presented, stands clear of the act of February 24, 1877 (pam. p. 19), which act gives rank to such acknowledgments only as are evidenced by writing. The act is too recent to be invoked on the present occasion, the intestate having died before it was passed. The seventh paragraph of section 2533 of the Code enumerates the debts which are to be ranked as liquidated demands in distributing *this* estate, the relative rights of the creditors having become fixed at the time of the intestate's death. The words of that paragraph are as follows: "All liquidated demands, including foreign judgments, dormant judgments, bonds, and all other obligations in writing for the payment of money, promissory notes, and all debts the amount due on which was fixed and ascertained or acknowledged prior to the death of the decedent." The book entries made by the debtor in his lifetime, and his oral recognition of his books as correct, upon the day before his death, would serve, we think, to acknowledge the amount shown against him on balancing the account of McNulty, George & Hall as contained in the books. It was, doubtless, to these creditors and others whose accounts were in the books, that he referred as "foreign creditors." The books alone would prove the debt, without a word of evidence from the out-

side ; and this they would do by virtue of the admission or acknowledgment of the debt by the debtor, as deduced from the entries. Indeed, we do not well see why such entries would not come up even to the requisitions of the new statute, and be the acknowledgment in writing which it requires. McNulty, George & Hall are claiming only to the extent of amount or balance shown in their favor by the deceased debtor's books, and not beyond it. In regard to the consignment of salt by the Holston Salt and Plaster Company, the record seems to indicate that the deceased had credited the company with the consignment, and sold out for cash. He thus had the company's funds in his hands, and, as we understand the record, the amount can be arrived at from the entries made by the deceased in his own books. At all events, the administrator returns it in his bill. He probably acquired his information from the cash book if not from the account book.

The fees of the counsel who were employed by the intestate in his life-time at round sums expressly agreed upon, were liquidated to the extent of one half, if there was no stipulation making the retainer less than half, and no abandonment of the cases, or other default, on the part of the counsel. This results from section 406 of the Code, which declares that, " Unless otherwise stipulated, one-half of the fee in any cause is a retainer, and due at any time, unless the attorney, without sufficient cause, abandons the case before rendering service to that value ; but in cases where he has rendered such service, and cannot render the balance of service—from the act of his client, providential cause, election to office, or removal out of the state—he is entitled to retain the amount or a due proportion, if collected, or sue for it and collect it, if not; where no special contract is made, the attorney may recover for the services actually rendered." There is some degree of confusion and obscurity in a part of this language, but the meaning seems to be that one-half of the agreed fee is a retainer and due immediately, as a general rule, and that from that half no deduction is

to be made if the attorney keeps himself in a situation to render the stipulated services, and does not at any time neglect or violate his duty. An apportionment takes place, perhaps, even as to this half, where, by election to office, removal from the state, or providential incapacity the attorney becomes unavailable to the client; but where the client is at fault, or where the providential visitation is to him, we cannot suppose that the law intends the retainer to be reduced. Why should it be reduced? In the nature of things, a retainer is earned when the attorney dedicates himself by contract to his client's service, thereby cutting himself off from employment by the adverse party. The subsequent voluntary, or even involuntary, disability on his part to render the service contemplated, may well work a forfeiture of the retainer, in whole or in part; but so long as the attorney remains able and willing to perform all the service for which he contracted, neither the fault nor the misfortune of his client ought to affect him—certainly not, beyond that half of the fee to which the quality of a retainer does not belong. A proper application of what we decide, to the claims for fees by the firms of Johnson & McCamy and Hanks & Bivings, would be to allow each firm twelve dollars and fifty cents as liquidated. Perhaps, it would be safest not to attempt any apportionment of the agreed fee of twenty-five dollars between the two cases (the misdemeanor and the felony) as such apportionment would depend upon matters extrinsic of the contract. For decisions heretofore made by this court as to what constitute liquidated demands, see the reports cited by the counsel for the plaintiffs in error.

Judgment reversed.