## THIRD NATIONAL BANK OF COLUMBUS et al. v. STRAUSS, administrator, et al.

1. When a .decedent in his lifetime assented to the correctness of an account rendered against him, it became, after such assent, a liquidated demand, and as such entitled to rank with promissory notes in the payment of the decedent's debts.
2. In a contest between creditors as to the rank in the distribution of the estate of a decedent of an account alleged to have been assented to by a decedent during his lifetime, the books of account of the decedent and certain receipts issued by his clerks were admissible in evidence. ·
3. In the distribution of the estate of· a decedent, the claims of creditors would rank according to their several priorities at the time of his death; and a conditional promise made by the decedent during his lifetime to pay attorney's fees would not entitle them to rank as liquidated demands merely because they might be included in a judgment which was rendered against the administrators of the decedent in a suit filed after the death of the decedent.

NOVEMBER 16, 1910.

Exceptions to auditor's report. Before Judge Gilbert. Muscogee superior court. September 11, 1909.

*S. B. Hatcher, F. U. Garrard,* and *Goetchius & Chappell,* for plaintiffs in error. *Love & Fort, T. T. Miller, J. H. Lewis, A. W. Cozart, W. A. Little, Slade & Swift, Bowden & Goldstein, W. C. Neill, J. L. Willis,* and *Wynn & Wohlwender,* contra.

ATKINSON, J. The administrators upon the estate of Max Simons, deceased, filed a petition against the creditors of the estate, alleging its insolvency, the insufficiency of the assets to pay in full. the· demands of note creditors and open-account creditors, and further that certain of the account creditors were claiming that in the distribution of the estate their accounts were liquidated and should rank as notes. The prayers, among others, were that all creditors be required to interplead, and that the court give direction relative to the rank of the several claims and the way in which they should be paid by the administrators. A large number of creditors intervened, several of them, including the plaintiffs in error, setting up their demands evidenced by notes, and claiming priority over all open-account creditors, one setting up a balance due on a judgment rendered against the administrators in a suit filed after the intestate's death, which included certain attorney's fees provided for in a promissory note, while others set up accounts which they claimed were liquidated and should rank as notes. The case was referred to an auditor. On the hearing the auditor ruled

against the plaintiffs in error on questions relative to the admissibility of evidence, to which they filed exceptions, and, after the conclusion of the evidence, also ruled against them by awarding to the judgment intervenor the attorney's fees included in the judgment obtained against the administrators, as above stated, and also by holding that the demands of certain of the account creditors were liquidated and entitled to rank as notes in the distribution of the estate. Exceptions were filed to these rulings, but on the hearing by the judge the report of the auditor was sustained in its entirety and all of the exceptions overruled. To this judgment a bill of exceptions was sued out, and error was assigned upon the several rulings mentioned. There were other interventions filed, but neither the parties filing the same nor the plaintiffs in error in the present case excepted to the judgment of the court with reference to the claims of such intervenors, and therefore no further reference to them is necessary.

1. One contest was upon an issue between the plaintiffs in error, as note creditors, and the creditors whose open.accounts were alleged to be liquidated and entitled to rank as notes, it being contended by the former that the latter were not so entitled to rank. Under appropriate notice the administrator produced the books of account of the deceased and certain dray receipts. In connection with other evidence they were admitted over the objection of plaintiffs in error that they were irrelevant. The entire evidence disclosed the following. The intestate while in life conducted two retail stores, and the accounts in question were for goods purchased which formed parts of the stocks of goods in those stores. In connection with the operation of the stores, certain bookkeepers and clerks were employed by the intestate. With reference to some of the accounts, the goods specified in them were delivered by drays accompanied with invoices. The clerks would check in the goods specified in the invoices, and, when found correct, would sign receipts to the draymen. In other instances there were no such dray receipts, but goods would be received without them. There were a number of creditors who had made deliveries of goods in each of the two ways above mentioned; but after receipt of the goods in the stores of the intestate, the bookkeepers entered on the books memoranda of the purchases. The books thus made specified in separate columns the articles purchased, the prices paid, and the credits of payments, but did not

show any footing up or striking of balances. The books were not in the handwriting of the intestate, but some times he looked over the books, and also gave directions for entries to be made on them. Shortly before his death he wrote a letter to his various creditors, making no special reference to his books, but asking indulgence on his accounts generally. The creditors also kept books, and evidence concerning them was introduced. The record brought to this court does not contain excerpts from any of the books kept either by the intestate or by the creditors. But the auditor reported, relatively to the books of the creditors whose accounts he held should rank as notes, that they and the books of the intestate "substantially agreed." It was contended by the plaintiffs in error that while the books of the intestate would have been admissible inter partes merely to prove the accounts of the creditors, they were not admissible to prove their rank on the trial of the issue between note creditors and open-account creditors in the distribution of the intestate's estate. The ruling of the auditor adverse to this contention was sustained by the judge, and on exception the question as to the admissibility of the evidence is now for decision. It is provided in the Civil Code, § 3424: "In the payment of the debts of a decedent, they shall rank in priority in the following order: . . 8. All liquidated demands, including foreign judgments, dormant judgments, bonds, and all other obligations in writing for the payment of money, promissory notes, and all debts the amount due on which was fixed and ascertained or acknowledged in writing prior to the death of the decedent. 9. Open accounts." The words "in writing" in the last part of the eighth paragraph were not included in the statute until they were introduced by the amending act approved February 24th, 1877 (Acts 1877, p. 19). The case of *McNulty* v. *Pruden,* 62 *Ga.* 135, originated before the passage of the act of 1877, and hence what was said in that decision relative to the effect of the amendment would not be binding; but in the discussion Bleckley, J., said: "And, first, it is to be observed that the question of liquidated demands, as now presented, stands clear of the act of February 24th, 1877 (pam. p. 19), which act gives rank to such acknowledgments only as are evidenced by writing. The act is too recent to be invoked on the present occasion, the intestate having died before it was passed. . . The book entries made by the debtor in his lifetime, and his oral recognition of his

books as correct, upon the day before his death, would serve, we think, to acknowledge the amount shown against him on balancing the account of McNulty, George & Hall as contained in the books. . . The books alone would prove the debt, without a word of evidence from the outside; and this they would do by virtue of the admission or acknowledgment of the debt by the debtor, as deduced from the entries. Indeed, we do not well see why such entries would not come up even to the requisitions of the new statute, and be the acknowledgment in writing which it requires." In this language a strong inference is expressed that the acknowledgment contemplated by the statute is an acknowledgment in writing. In the case of *Kelley* v. *Terhune,* 113 *Ga.* 365 (38 S. E. 839), both the statute and decision above referred to were cited and considered, and it was there ruled that "When a decedent in his lifetime assented to the correctness of an account rendered him, it became, after such assent, a liquidated demand, and as such entitled to rank with promissory notes in the payment of the decedent's debts." This ruling was announced in a case similar to the one under consideration, and in which the rank of account creditors in the distribution of the assets of an insolvent estate of a deceased person was involved. The original record on file in this court shows that the ledger account books of the deceased were introduced, and they contained entries which were not made by the intestate but were made by a bookkeeper. The entries consisted in the statement of several accounts of creditors, which showed the dates and amounts of purchases and dates and amounts of credits, and in some instances the summing up of amounts of each. A witness testified that he clerked for the intestate, and as clerk he checked up all goods bought by the deceased and found that the goods sold to the deceased checked up according to the bills rendered by the creditors. As bookkeeper for the deceased, witness, after checking up the goods, opened up accounts on the ledger of the deceased, and made the entries which appeared on the ledger. Occasionally the deceased assisted witness in checking up the goods, but witness was unable to say what particular goods he assisted in checking. The accounts were opened for the purpose of showing purchases and payments by the deceased in the course of his business, all purchases and payments made up to the date of his death being entered therein. If the intestate had lived, any additional purchases from and payments to these credit-

ors would-have been entered on the books. Deceased received statements from all these creditors, showing amounts he owed them. He knew of these, and made no objection if they were correct. The witness further testified: "I made these entries on the books at his request, and he referred to the books to verify correctness of these accounts." It thus appears that the evidence failed to show that the intestate, while in life, had by his own hand reduced to writing any acknowledgment of the accounts of the creditors who were seeking to have their accounts rank as notes. But under the evidence in its entirety this court held that the demands were liquidated and entitled to rank as notes. This ruling, being by a bench of six Justices, is controlling. Yielding to the contention that a demand may be made a liquidated one without writing, and dealing with the record as presented, the character of the evidence in the case cited is not substantially different from that in the case now before us. In the former case there was evidence of statements rendered, which were not disputed, while there was no such evidence in the latter, but that was merely cumulative. Another slight difference in the records of the two cases is that in the case under consideration the auditor reported that the books of the deceased and those of the creditors "substantially agreed," while in the case cited there was evidence to the effect that the books of the intestate actually agreed with the accounts of the auditor. The burden of showing error was on the plaintiffs in error, and they did not bring up copies of the books to show the extent of any difference that might exist between them, and for that purpose there is no resort except to the report of the auditor, and his conclusion that they substantially agreed must control. The auditor's report that the books substantially agreed must be taken to mean that they were the same in substance. Such being the meaning, the fact that he so reported them will not support any argument in favor of the plaintiffs in error. In view of the ruling in the case last above cited, the evidence objected to was admissible.

2. One of the other exceptions referred to the contention that the evidence offered by the open-account creditors was insufficient to authorize the auditor to hold that the accounts were entitled to rank as promissory notes in the distribution of the assets of the estate. From what has been said in the preceding division of the opinion it appears that this position of the plaintiffs in error is not tenable.

3. Another exception was to the judgment of the court overruling the exception to the finding by the auditor that the amount of the attorney's fees included in the judgment in favor of one of the intervenors was entitled to rank with the notes as a liquidated demand against the estate of the deceased. This exception is well taken. As among creditors, their rights as against the estate of a decedent are to be determined according to the rank and priority of their claims at the time of his death. They do not acquire preference by obtaining judgment against the administrator. *Carter* v. *Penn*, 79 *Ga.* 747 (4), (4 S. E. 896). The suit was filed against the administrator, which was necessarily after the death of the intestate. The auditor was of the opinion that a judgment obtained in such a suit merged into it the conditional promise to pay attorney's fees, and, under the provisions of the statute, made them rank as notes in the distribution of the estate. For reasons already suggested this was erroneous.

*Judgment affirmed, with direction. All the Justices concur.*